# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FIELDING MCGEHEE** *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:01-cv-01872 (TNM) |
| **U.S. DEPARTMENT OF JUSTICE**, | |
| Defendant, | |

## MEMORANDUM OPINION

In 1998, the Indianapolis Colts drafted Peyton Manning, Britney Spears released her hit single "Baby One More Time," and Fielding McGehee submitted a Freedom of Information ("FOIA") request to the FBI. While the heydays of Mr. Manning and Ms. Spears have come and gone, Mr. McGehee's FOIA request lingers.

In response to Mr. McGehee's requests, the FBI has produced thousands of pages of responsive records, CDs, audio tapes, video tapes, and photographs. After twenty years of negotiation and litigation, the FBI insists that it has satisfied its statutory obligations and that this litigation should be retired. Mr. McGehee and his wife Rebecca Moore (collectively the "Plaintiffs") disagree. Both sides have moved for summary judgment. For the reasons below, the Plaintiffs' motion will be denied, and Government's motion will be granted.

# I. BACKGROUND[1]

In 1998, the Plaintiffs submitted a FOIA request to FBI Headquarters, beginning their twenty-year quest for information about the victims and investigations of the Jonestown Massacre in Jonestown, Guyana. *See McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 226 (D.D.C. 2011). The Plaintiffs eventually filed a Complaint against the FBI's parent agency, the Department of Justice, alleging that the production that they received from the FBI was inadequate. *Id.* After years of negotiation, searches, and productions, the parties filed cross-motions for summary judgment. *Id.* Judge Kessler, who was then overseeing this case, granted in part and denied in part both motions. *Id.* The court ruled that the FBI's search was adequate. *Id.* at 230. It also held that the Bureau's application of Exemptions 3, 7(C), 7(D), and 7(E) were proper. *Id.* at 230–37. But it determined that FBI's *Vaughn* Index was deficient, so the court could not decide whether the FBI had disclosed all segregable information. *Id.* at 238. The court did not rule on the FBI's withholdings based on Exemptions 1 and 2 and a sealing order. *Id.* Instead, the court ordered the Government to file an updated *Vaughn* Index after it processed the material previously withheld under Exemptions 1 and 2 and a sealing order. *Id.* at 239.

Processing this material, the FBI discovered and then released more material to the Plaintiffs. Seventeenth Hardy Decl. ("Hardy Decl.") ¶ 15, ECF No. 256-3. Eventually, in 2014, the court ordered the Plaintiffs to "submit a final comprehensive list of document requests" to the FBI. ECF No. 191. In response to the Plaintiffs' list, the FBI conducted additional searches and released more material including photographs, audio tapes, and video tapes. Hardy Decl. ¶ 23.

---

[1] The Court will not recite the full breadth of the factual and procedural background of the case here. Instead, the Court assumes familiarity with *McGehee v. U.S. Department of Justice*, 800 F. Supp. 2d 220, 226 (D.D.C. 2011).

Both parties have again moved for summary judgment. Pls.' Mot. for Summ. Judgment ("Pls.' Mot."), ECF No. 253; Def.'s Cross-Mot. for Summ. Judgment ("Def.'s Mot."), ECF No. 256.

## II. LEGAL STANDARDS

The "vast majority" of FOIA cases are resolved on summary judgment motions. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In the FOIA context, an agency is entitled to summary judgment if it establishes "beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents," *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (cleaned up), and that each relevant record has been produced or is exempt from disclosure. *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). FOIA permits agencies to withhold information that falls under "one of nine specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor of disclosure." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010) (citations omitted).

The FBI "bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). It can carry this burden "by submitting sufficiently detailed affidavits or declarations, a Vaughn

3

index of the withheld documents, or both, to demonstrate that [it] has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate." *Brennan Ctr. for Justice v. U.S. Dep't of State*, 296 F. Supp. 3d 73, 80 (D.D.C. 2017). If this information "is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011). In other words, "[u]ncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

## III.     ANALYSIS

In July 2018, the Court set a briefing schedule which required the Plaintiffs to file their Opposition to FBI's Motion for Summary Judgment by December 15, 2018. Minute Order of July 26, 2018. The Court later granted the Plaintiffs' motion for extension of time, allowing them to file on or before January 4, 2019. Minute Order of Dec. 12, 2018. And again, the Court moved the deadline, allowing the Plaintiffs to file on or before January 31, 2019. Minute Order of Jan. 4, 2019. The January 31 deadline passed with no filing from the Plaintiffs. Minute Order of Feb. 5, 2019. So the Court issued a show-cause order. *Id.* After the Plaintiffs asked for more time to respond to the Court's show-cause order, the Court set a revised briefing schedule, warning the parties that further extensions would be disfavored. *See* ECF No. 264.

The Plaintiffs' Opposition was due February 28, 2019, but no brief was ever filed. The Plaintiffs have not received—or even asked for—an extension of time. Instead, they have submitted a "Notice of Filing" in which they merely notify the Court of computer trouble and

that they intend file their Opposition "within a week" after Plaintiffs' counsel returns from Singapore.[2] Notice of Filing, ECF No. 265. This is unacceptable.

District courts enjoy broad discretion when deciding case management and scheduling matters. *See, e.g.*, *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003); *McSheffrey v. Exec. Office for U.S. Attorneys*, No. 00-5268, 2001 WL 674640, at *1 (D.C. Cir. May 4, 2001). The Court, not the parties, sets the briefing schedule, and a party cannot unilaterally alter it. The Court will thus rule on these motions now, making an independent evaluation under Rule 56. *See Winston & Strawn, LLP v. McClean*, 843 F.3d 503, 505 (D.C. Cir. 2016).

**A. The FBI's Search Was Adequate.**

"In order to obtain summary judgment, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

In their motion for summary judgment, the Plaintiffs ask this Court to order the FBI to "review and process for release all records of the San Francisco Field Office that were transferred to the FBI Headquarters Civil Litigation Division." Pls.' Mot. at 21. According to the Plaintiffs, the FBI Headquarters had these San Francisco documents when the Plaintiffs submitted their FOIA requests, but the FBI has not produced them. *Id.* at 17–19.

---

[2] As this counsel has been warned in the past, "[t]he mere existence of a prior commitment does not provide a legitimate excuse for non-compliance with the directives of this Court." *Schoenman v. FBI*, 841 F. Supp. 2d 69, 75 n.2 (D.D.C. 2012) (denying this counsel's motions to file late).

The Court agrees with the Government that this argument is speculative. The Plaintiffs offer no evidence that the San Francisco documents were at the FBI Headquarters when they submitted their FOIA requests. In response, the FBI submitted a declaration (the seventeenth in this case, to be exact) from David M. Hardy, Section Chief of the Record/Information Dissemination Section, Information Management Division at the FBI. *See* Hardy Decl. ¶ 1. Mr. Hardy's declaration explains why the documents were not at the FBI Headquarters when the Plaintiffs made their request. Hardy Decl. ¶ 33. These records were sent from San Francisco to FBI Headquarters for a limited purpose and then returned to San Francisco. *Id.* The declaration explains that "the FBI did not locate the 262 volumes described . . . in its numerous and extensive searches" of the FBI Headquarters. *Id.*

"Generally, the FBI is not obligated to undertake a search of its field office's records where a plaintiff's request is submitted directly to [FBI Headquarters]." *Kidder v. FBI*, 517 F. Supp. 2d 17, 25 (D.D.C. 2007). At the time, FOIA regulations required the Plaintiffs to submit their requests to the field offices that they believed had the responsive records. *See* 28 C.F.R. § 16.3(a). This "regulation by nature generally aims to promote an agency's ability to respond to requests in an efficient manner." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017). The Plaintiffs did not submit a request to the San Francisco office; they submitted a request to FBI Headquarters. Under the regulation at the time, the FBI had no obligation to process FBI San Francisco field office records. *See id.* at 118–19.

The Court rejects the Plaintiffs' sole objection to the FBI's search. The FBI has submitted a detailed declaration explaining why the San Francisco would not have been at the FBI Headquarters when the Plaintiffs submitted their requests back in 1998. And given the Plaintiffs' requests, the FBI had no obligation to process material housed in San Francisco. Even

if the Plaintiffs are correct in their bald assertion that the San Francisco documents were at FBI Headquarters in 1998, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

The adequacy of any FOIA search is measured by a standard of "reasonableness" and depends on the circumstances of the case. *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 663 (D.C. Cir. 2003). To show reasonableness at the summary judgment phase and to allow the court to determine whether the search was adequate, an agency must provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68.

As the FBI emphasizes, Judge Kessler already held that the FBI's search was "reasonably calculated to uncover all relevant documents." *McGehee*, 800 F. Supp. 2d at 230. This Court agrees. The FBI has since conducted another search and released more material to the Plaintiffs. This does not undermine FBI's position here. Rather, this only highlights the FBI's good-faith efforts to locate all responsive records. *See Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (explaining "that the additional releases suggest 'a stronger, rather than a weaker, basis' for accepting the integrity of the search"). In sum, the Court holds, again, that the FBI's search was adequate.

**B. The FBI Has Properly Invoked Exemption 1.**

The Government argues that it properly withheld information under Exemption 1, which protects materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact

properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The FBI here relies on Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), which prescribes a uniform system for classifying and safeguarding national security information. So the Government must show both that the information was classified under to the proper procedures and that the withheld information substantively falls under this Executive Order. *See Salisbury v. United States,* 690 F.2d 966, 971–72 (D.C. Cir. 1982) (analyzing a predecessor to Executive Order 13,526).

Mr. Hardy reviewed the documents and determined that the redacted information was currently and properly classified as "confidential" or "secret" under Executive Order 13,526. Hardy Decl. ¶ 35. Mr. Hardy explained that the information withheld by the FBI included information that would (a) reveal the actual intelligence activities used by the FBI against *specific* targets of foreign counterintelligence investigations or operations; (b) identify a target of a foreign counterintelligence investigation; and (c) disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets. *Id.* ¶ 37. According to Mr. Hardy, "[i]nformation obtained from the intelligence activities or methods protected in these pages is very specific in nature, provided during a specific time period, and known to very few individuals." *Id.*

Because courts are generally ill-equipped to second-guess an agency's opinion in the national security context, "the government's burden is a light one." *ACLU,* 628 F.3d at 624. "[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). The Government's arguments need only be both "plausible" and "logical" to justify the invocation of a FOIA

exemption in the national security context. *See Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

Conducting a *de novo* review, the Court finds that it is both plausible and logical that the disclosure of the information withheld by the FBI "reasonably could be expected to result in damage to the national security." Executive Order 13,526. After all, this FOIA request relates to the murder of a congressman abroad and the second largest single loss of American civilians by a deliberate act in history. And "finding no evidence in the record to support the opposition conclusion, no further investigation is required." *ACLU*, 628 F.3d at 625. The Court thus finds that the FBI has properly invoked Exemption 1.

## C. The FBI Has Properly Invoked Exemptions 6 and 7(C).[3]

After the FBI conducted its latest search, it provided the Plaintiffs "with the best copies available of all photographs" located. Hardy Decl. ¶ 42. But the FBI redacted information under Exemptions 6 and 7(C). *Id.* According to the FBI, the Plaintiffs did not provide privacy waivers or proof of death documentation for the individuals in these photographs. *Id.*

Exemption 7(C) protects information compiled for law enforcement purposes if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether Exemption 7(C) applies, courts balance the public interest in disclosure with the privacy interests implicated by release of the material. *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

---

[3] Because the FBI asserted Exemption 6 coextensively with Exemption 7(C) and, as explained in this section, the information sought was properly withheld under Section 7(C), there is no need to address the more stringent standards of Exemption 6.

9

The FBI argues that it conducted the "same balancing of public versus privacy interests" that Judge Kessler already approved in her earlier Memorandum Opinion. Def.'s Mot. at 10. There, it alleged that it "asserted Exemption 7(C) to protect names and/or identifying information of: 1) Third Parties Merely Mentioned; 2) Third Parties who Provided Information; 3) FBI Agents and Support Personnel; 4) Non–FBI Federal Government Personnel; 5) Local and/or State Government." *McGehee*, 800 F. Supp. 2d at 233. Here, again, the FBI invokes Exemption 7(C) to justify its decision to withhold photographs "for individuals Plaintiffs have not provided privacy waivers or proofs of death for." Hardy Decl. ¶ 42.

Whether disclosure of private information is warranted under Exemption 7(C) turns on whether the information "sheds light on an agency's performance of its statutory duties." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Here, the Plaintiffs do not explain why—and indeed it is hard to see how—this information would shed light of the FBI's performance of its statutory duties. The D.C. Circuit has held that, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). And the Plaintiffs have made no allegations of illegal activity.

Given Mr. Hardy's "[u]ncontradicted, plausible [declaration] showing reasonable specificity and a logical relation to the exemption," the Court finds that the FBI has properly invoked Exemption 7(C). *Ancient Coin Collectors Guild*, 641 F.3d at 509.

**D. The FBI Has Satisfied Its Segregability Requirement.**

Even if a record contains information exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." *Johnson v. Exec. Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up).

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). The Hardy Declaration makes it clear that the FBI's redactions occurred only after a careful page by page, line by line review of the information and a determination whether any of the information was reasonably segregable and thus available for disclosure. *See* Hardy Decl. ¶ 46. So the burden is on the Plaintiffs to offer contrary evidence to rebut the applicable presumption. *See Sussman*, 494 F.3d at 1117 (discussing standards to rebut this presumption). And the Plaintiffs have not challenged the FBI's segregability review here. *See generally Pls.' Mot.* The Court is satisfied that the FBI disclosed all reasonably segregable, non-exempt information.

### IV.     CONCLUSION

For these reasons, the Plaintiffs' motion will be denied, and Government's motion will be granted. A separate order will issue.

Dated: March 4, 2019                                        TREVOR N. McFADDEN, U.S.D.J.